HERMAN BUTER, Appellant, v. J. T. SLATTERY et al., Appellees.

No. 40772.

June 20, 1931.

Bennett Cullison, Verne H. Byers, for appellant.

W. P. Welch, Prichard & Prichard, for appellees.

FAVILLE, C. J.—Appellant owned a farm of 160 acres. In 1919 he sold the farm to the appellee Slattery for $165 per acre. There was a first mortgage on said premises of $10,000, which was later reduced to $8,000. The appellee gave the appellant a second mortgage on said premises for $12,000, which later, by an arrangement between the parties, was reduced to $8,000. This note and mortgage represented a part of the purchase price, and by their terms were due March 1, 1929. The appellant became indebted to the Dunlap State Bank on a note for the principal sum of $2500, which note was executed in June, 1926. Said bank failed and trustees were appointed to collect the assets of said bank. It appears that some negotiations were had between the trustees and the appellant looking toward an adjustment of the appellant's note to said bank, but these were unsuccessful, and finally, on May 11, 1927, the trustees brought suit against the appellant upon his said indebtedness to said bank. In said action they caused a writ of attachment to be issued and the sheriff levied said writ of attachment upon the said $12,000 note and mortgage of the appellee to the appellant, which note and mortgage were then in the appellant's safety deposit box in the Dunlap State Bank. On or about September 22, 1927, judgment was entered in behalf of the said trustees of said bank and against the appellant for $2687.02 and costs. The court also at said time ordered a special execution to issue for the sale of the note and mortgage given by appellee to the appellant and which had been seized under said writ of attachment. Due notice of the sale of said note and mortgage under said special execution was had. Appraisers were appointed by

the sheriff, who fixed the value of said note and mortgage at $3770. The appellant and the appellee both attended the sheriff's sale of said property and were represented by their respective counsel at said sale. The judgment creditor bid for said note and mortgage the amount due on the judgment which the trustees had obtained against the appellant. One Thomas McAleer then bid $5 more than said amount, and there being no other bids, the said note and mortgage were sold to said McAleer and duly assigned to him as purchaser. The special execution was duly returned by the sheriff and the amount of McAleer's bid was paid to the sheriff in satisfaction of the judgment held by the trustees of said defunct bank against the appellant. McAleer immediately thereafter released said mortgage of record. It is conceded that the money paid by McAleer to the sheriff on his said bid at said execution sale was, in fact, the money of the appellee Slattery, who was the maker of said note and mortgage. McAleer is a brother-in-law of Slattery and did not put any of his own money in the transaction. It was all Slattery's money. It appears that Slattery borrowed the money to purchase said note and mortgage at said execution sale from a bank in Dunlap, giving a mortgage on his homestead therefor, and that one of the trustees, who was a judgment creditor in the action against the appellant, negotiated the loan, and was cashier of the bank that loaned the money to Slattery, and knew the purpose for which Slattery intended to use it. Said sale was on November 7, 1927, and the instant action was begun on the 27th day of August, 1929. The gist of the appellant's action is the claim that the appellee was guilty of fraud in the purchase of said note and mortgage at said execution sale. There is an attempt to show, and some claim is made of a conspiracy between the trustees of the bank, or some of them, and the appellee Slattery, in causing said note and mortgage to be levied upon and sold at said sheriff's sale, but there is no sufficient evidence in the record to establish any such claim of conspiracy to defraud appellant.

It is also true that the appellant entered into some negotiations in endeavoring to secure his obligation to the trustees by the execution of a chattel mortgage, which was refused, but there is nothing in the transaction that is in any manner indicative of fraud.

680

The manner of the appraisement of the note and mortgage prior to the sheriff's sale is also challenged, but we find nothing in the record to indicate that there was anything irregular or fraudulent in the making of the appraisement of the note and mortgage at a valuation of $3770. Appellant was fully apprised of the attachment of the note and mortgage and of the execution sale, and attended with his counsel, knew of the bids that were made, entered no protest or objection, and in no manner sought any adjournment of said sale. Nearly two years' transpired thereafter before appellant instituted this action challenging the validity of such sale.

One of the main contentions of the appellant is that the amount bid for said note and mortgage was so grossly inadequate as to indicate fraud. It is a familiar rule that where the price obtained at a sheriff's sale is so grossly inadequate as to amount to unfairness or oppression, a court of equity may interfere and vacate and set aside the execution sale. Drake v. Brickner, 180 Iowa 1166; Glenn v. Miller, 186 Iowa 1187; McCann v. McCann, 207 Iowa 610. The important fact question at this point is whether or not the sale was so grossly inadequate as to justify its vacation by a court of equity. It is to be remembered that the mortgage which was being sold under the execution sale was a second mortgage upon 160 acres of land subject to a first mortgage on said premises for the principal sum of $8,000. At the time of the sale of the second mortgage land was not moving readily upon the market and second mortgages were not finding ready sale. Much evidence was introduced by both parties in respect to the value of the land. This was necessarily opinion evidence, and the value fixed upon the premises ranged all the way from $75 per acre, as testified to by certain witnesses for the appellee, to as high as $150 per acre, as testified to by witnesses for the appellant. The purchaser of the second mortgage did not acquire any title to the premises nor right to possession until after foreclosure, and of necessity was compelled to be in a position to protect his security against foreclosure of the prior mortgage.

We have examined the record and fail to find that under all the facts and circumstances disclosed there was such a gross inadequacy in the price at which the said second mortgage was sold as to indicate fraud or to require a court of equity to vacate

and set aside the same. The question is a fact question at this point, and we are constrained to concur in the conclusion of the trial court that the appellant has failed to show such indicia of fraud as to justify the interference of a court of equity.

The appellant contends that by reason of the fact that appellee was the purchaser of the note and mortgage at the execution sale, the result of the transaction was merely that he paid a part of his obligation to the appellant, and appellant offered to credit the appellee upon said note and mortgage with the amount that was bid therefor at the execution sale. The difficulty with appellant's position at this point is that appellant lost all his title to and interest in the note and mortgage when the same were sold at the execution sale to satisfy his indebtedness to his creditors, the trustees of the said bank. The appellant's obligation to the bank was satisfied in full. The appellant received the benefit of the full amount that the note and mortgage brought at the execution sale. It is quite immaterial to the appellant who the purchaser may have been at the execution sale. The appellant owned the note and mortgage. They were duly and legally sold at execution sale, and he received the benefit of the sale of said property by satisfaction of the judgment which the execution creditor held against him. The purchaser at the execution sale, and not the appellant, then became the owner of the note and mortgage in question, and such purchaser could do as he saw fit with the property thus legally acquired at the execution sale. He could surrender it to the appellee, or enforce it against him as he saw fit. The fact that the appellee furnished the money with which to purchase the note and mortgage becomes wholly immaterial, because without fraud the appellant herein lost all title and interest in said note and mortgage by virtue of the execution sale. The case of Burnheimer Bros. v. Hart, 27 Iowa 19, relied upon by the appellant, is not in point.

We reach the conclusion that the trial court did not err in dismissing the appellant's petition, and the judgment appealed from is—Affirmed.

DE GRAFF, WAGNER, ALBERT, KINDIG, and GRIMM, JJ., concur.